## THE KANSAS PACIFIC RAILWAY CO. v. S. C. LANDIS.

ANIMAL NOT CONFINED *as to Railway.* Plaintiff was the owner of a quarter-section of land, through which ran the defendant's railroad. The quarter-section as a whole was inclosed with a legal fence, but there was no fence along the defendant's road, separating the right of way from the rest of the quarter-section. The plaintiff turned his animal loose in this quarter-section, and during the night-time it was injured by the defendant's cars. The night herd law was in force in the township in which the land was situate. *Held,* That while the plaintiff may be said to have *confined* his animal within the meaning of the statute as to all parties except the defendant, an owner of part of the premises within the inclosure, he cannot be held to have so confined it as to the defendant, and hence, there being no negligence on the part of the defendant, except in not having a fence along its right of way, he cannot recover for the injury. The obligation of the plaintiff to confine his animal, and that of the railroad to fence its right of way, are of equal force, and he who disregards the one cannot recover of the other for injuries resulting alone from their concurrent disregard of statute obligations.

*Error from Shawnee District Court.*

ACTION under the stock law of 1874, brought by *Landis* against the *K. P. Rly. Co.*, to recover damages for killing his mule. Trial at the January Term, 1880, of the district court, and judgment for the plaintiff. The *Railway Company* brings the case here. The opinion states the facts.

*J. P. Usher,* and *A. L. Williams,* for plaintiff in error:

In 1862, Congress had the exclusive right and dominion over the Pottawatomie reservation, which was not parted with or abridged, until after 1862. (12 U. S. Stat. at Large, 1191.) This being so, the decision of the court in *Grinter v. U. P. Rly. Co.,* 23 Kas. 642, is directly in point to show that the right of way over said reservation was granted to the *K. P. Rly. Co.* by the act of Congress in 1862. By the case of *M. K. & T. Rly. Co. v. K. P. Rly. Co.,* 7 Otto, 491, it is certain that the grant was a grant *in præsenti,* and took effect from the passage of the act, July 1, 1862.

Under these circumstances the plaintiff in error acquired the land on which the accident happened, before the defendant in error acquired his farm, so that he took no title of any kind to the right of way, and was either bound to fence his land along the right of way of plaintiff in error, or keep his mule up — the night herd law being in force; and failing to do so, he cannot recover. ( 20 Kas. 353; 21 id. 613, 622.)

*M. T. Campbell,* for defendant in error:

If the theory of plaintiff in error be correct, then so far as recovering for injuries done to stock in the night-time in herd-law townships is concerned, the stock law of 1874 is a dead letter; for under no circumstances can the company be made liable in such cases. Instead, then, of the act of 1874 requiring the railway company to fence its road, the farmer through whose land it runs must fence it before he can pasture his stock in his own field in the night-time, and before he can relieve himself from liability as a trespasser on the company's right of way. This is not the law. Defendant in error violated no statute in allowing his mule to run "in his own inclosure," and consequently the authorities cited by plaintiff in error, if bearing on the case at all, are in favor of Landis, and under the agreed statement of facts he is entitled to recover. ( Laws of 1874, ch. 94; 24 Ohio St., 48; 12 Gray, 55; 25 Iowa, 139; 32 id. 561; 10 Ind. 49, 502.)

The opinion of the court was delivered by

BREWER, J.: This case was tried upon the following agreed statement of facts:

"The defendant is a corporation, and all through the year 1879 was running and operating a railroad in this state, and through this (Shawnee) county. In the night-time, on or about the 24th day of May, 1879, in Silver Lake township, in said county, and within what is known as the Pottawatomie reservation, a train of cars running on defendant's road ran against and killed plaintiff's mule within the inclosure of said plaintiff. But it is not intended to admit that the plaintiff owns the land occupied by defendant with its track and

right of way within and through said inclosure. Said inclosure is the northeast quarter of section 18, town 11, range 15, through which defendant's road runs, and which at the time of said killing was surrounded by and inclosed with a legal fence. There was and is no fence along on either side of defendant's railroad within said inclosure. There was a night herd law in said township at the time said mule was killed. Said mule was worth $50. Proper demand of the defendant for the same was made by plaintiff more than thirty days prior to the commencement of this action. A reasonable attorney's fee for prosecuting this suit in the justice's court is $10, and in the district court, $25."

The theory of the defendant is, that both parties were equal violators of the law, and that therefore plaintiff cannot recover; that of the plaintiff is, that the defendant was alone a transgressor, and must therefore pay for the injury which it is conceded was done. The case really turns upon the question whether the plaintiff was, as to the defendant, "confining the animal" at the time of the injury. That the defendant had not fenced its right of way, and was therefore liable under the stock law of 1874, is conceded, unless it appears that plaintiff was in equal wrong, and therefore within the case of *C. B. U. P. Rld. Co. v. Lea*, 20 Kas. 353, not entitled to a recovery. The language of the night herd law is, that the animal must be *confined* in the night-time. In this case the animal was loose in a quarter-section, which, as to the general public, was inclosed with a sufficient fence. Clearly, therefore, as to such general public, the plaintiff was without wrong. The case differs from that in 20 Kas. 353, in this, that there the animal was turned loose to wander wherever inclined, and thus to commit depredation upon any member of the public; while here the animal was so restrained, so "confined" to use the language of the statute, that the only party upon whose rights it could trespass was the defendant. Now, can a party be said to fully comply with the night herd law, who so confines his animals that they can trespass upon only one neighbor, or must it be held that as to that neighbor he violates the law, even though he keeps it as to all others? Take an illustration: Suppose sixty-four parties own each ten acres in

a single section; that the section is as a whole inclosed with a sufficient fence, but without any separate partition fences between the tracts of the several owners — can one owner of a ten-acre tract turn his stock loose in that section in defiance of the herd law, and deny its obligations on the ground that the section being inclosed, his duty as to the general public is performed? His sixty-three neighbors may suffer wrong, but beyond that local limit, the general public is protected. We cannot think that the import of the statute. Rights and duties may often be relative—no right or duty existing as to one party, while in full force as to another. Such, we think, to be true of this night herd law. The manner of confinement is not specified. All that the statute says is, that the animal must be confined. Grant that a legal fence furnishes sufficient confinement to bring a party within the protection of the statute, yet that legal fence must extend so far as to confine the animal from the premises of the party complaining of the trespass. In the illustration made, the animal turned loose in the section may be confined as to the general public, because of the legal fence surrounding the entire section, but it would be a strange perversion of language to say that it was confined as to the other sixty-three owners of land in the section. We do not think the size of the inclosure makes any difference, whether it be a section of land in the country, or a lot in a town or village. If the entire inclosure is held under one right and surrounded by a legal fence, then the animal left within the inclosure is confined within the statute as to all the world. But if the inclosed property is owned under different titles by separate parties, then while an animal turned loose within the inclosure may be confined as against outside parties, it cannot fairly be said to be confined as against other owners of land within the inclosure. If this be true of individuals owning separate tracts within the same inclosure, we cannot see that it makes any difference that one owner is a railroad corporation, or that the property it owns is a single narrow strip through the inclosure. All parties stand alike before the law. The gen-

eral law of obligation and right which controls individuals, obtains against corporations. He who disregards the law is liable to the party injured, but where a disregard of an equally binding statute by the latter equally contributes to the injury, the law will neither punish the violator of the one, nor relieve the violator of the other. In questions of this kind between individuals, the greater danger to the public from the disregard by one party of statute obligations, cuts no figure. The legislature may provide more stringent penalties, but in the absence of such, the individual cannot complain. There is no pretense that defendant was guilty of any negligence or any wrong, except in failing to fence, and it also appears that, as against the defendant, plaintiff had not confined his animal. Hence each had neglected a statute duty of equal obligation upon each. The injury resulting from this concurrent wrong will not be lifted from one wrong-doer and cast upon the other.

It follows from these considerations that the court erred, and that the judgment must be reversed, and the case remanded with instructions to enter judgment for costs in favor of the defendant, plaintiff in error.

All the Justices concurring.