THE BURLINGTON & MISSOURI RIVER RAILROAD COM-
PANY IN NEBRASKA, PLAINTIFF IN ERROR, V. C. H.
BRINKMAN, DEFENDANT IN ERROR.

Railroads: DAMAGE TO STOCK.    Under the act of June 20, 1867,
    a railroad company is liable for stock killed upon its track
    while running at large in the night-time at a point where the
    company was required but failed to fence its track, notwith-
    standing stock is prohibited by statute from running at large
    in the night-time.

ERROR to the district court for Johnson county.    Tried
below before WEAVER, J.

*Marquett & Deweese,* for plaintiff in error, cited: *Kirch v. B. & W. R. R.,* 17 Maryland, 32. *Giles v. B. & M. R. R.,* 55 N. H., 552. *McDonnell v. P. & N. A. R. R.,* 115 Mass., 564. *Railroad v. Champ,* 75 Ill., 577. *Perkins v. Railroad,* 29 Me., 307. *Jackson v. Railroad,* 25 Verm., 150. On contributory negligence, cited: *Munger v. T. R. R. Co.,* 4 N. Y., 349, 359. *Curry v. C. & N. W. R. R. Co.,* 43 Wis., 670. *Lawrence v. R. R.,* 42 Wis., 322. Albany Law Journal, 430. *D. & M. R. R. Co. v. Miami Co., Ohio,* 6 Central Law Journal, 436. *Pittsburg, Ft. W. & C. R. R. v. Methven,* 21 Ohio State, 586. *B. & M. R. R. v. Wendt,* 12 Neb., 77.

*Pinero & Chapman,* for defendant in error, cited, *inter alia: Hinman v. Railroad,* 28 Iowa, 491. *Bay City v. Austin,* 21 Mich., 390. *Railroad v. Cory,* 39 Ind., 48. *Walsh v. Railroad,* 8 Nev., 110. *Railroad v. Peacock,* 25 Ala., 229. *Corwin v. Railroad,* 13 New York, 42.

MAXWELL, J.

This is an action by Brinkman against the railroad company to recover for the loss of stock killed by the locomotive and cars of said company, the railroad at the place where the stock was killed having been built and in operation more than six months. To the petition the railroad company filed the following answer: "Now comes the defendant above named and for answer to the petition filed herein by the plaintiff admits that it is a corporation; that on or about the eleventh day of October, 1881, it was operating a line of railroad through Johnson county, known as the Atchison and Nebraska Railroad; that a train running on said railroad ran over two calves belonging to the plaintiff, killing one and wounding the other so that it died, both being of the value of twenty-eight ($28) dollars as set forth in plaintiff's petition; that said road was not fenced at the point where said calves entered on the defendant's track

and where the injury occurred; that the plaintiff served notice on the defendant of the value of said property, and that the same has not been paid. Further answering said petition, the defendant says that the plaintiff permitted said calves to run at large in the night-time, between sunset and sunrise, at the time of said accident, on or about the eleventh day of October, 1881, and that the train operated by the defendant's agents ran against and upon said calves in the night-time, after sunset and before sunrise of the night following October 11th above mentioned; that the plaintiff was guilty of contributory negligence in not restraining said calves from running at large and in permitting the same to wander upon defendant's line of railroad, without any fault of this defendant. Whereupon defendant demands judgment for costs."

Brinkman demurred to the second count upon the ground that the facts stated therein were not sufficient to constitute a defense to the action. The demurrer was sustained and judgment rendered in his favor for the amount claimed in the petition. The only objection in this court is, that the court erred in sustaining the demurrer.

The "Act to define the duties and liabilities of railroad companies," which was passed and took effect in June, 1867, is as follows: "That every railroad corporation whose lines of road or any part thereof is open to use, shall, within six months after the passage of this act, and every railroad company formed or to be formed, but whose lines are not now open to use, shall, within six months after the lines of such railroad or any part thereof are open, erect and thereafter maintain fences on the sides of their said railroad, or the part thereof so open for use, suitably and amply sufficient to prevent cattle, horses, sheep and hogs from getting on the said railroad, except at the crossings of public roads and highways, and within the limits of towns, cities and villages, with opens, or gates, or bars at all the farm crossings of such railroads, for the use of the propri-

etors of the lands adjoining such railroad, and shall also construct, where the same has not already been done, and hereafter maintain at all road crossings now existing or hereafter established, cattle guards suitable and sufficient to prevent cattle, horses, sheep, hogs, from getting on to such railroad, and so long as such fences and cattle guards shall be made after the time hereinbefore prescribed for making the same shall have elapsed, and when such fences and guards, or any part thereof, is not in sufficiently good repair to accomplish the objects for which the same is herein prescribed is intended, such railroad corporation and its agents shall be liable for any and all damages which shall be done by the agents, engines, or trains of any such corporations, or by the locomotives, engines, or trains of any other corporations permitted and running over or upon their said railroad, to any cattle, horses, sheep or hogs thereon; and when such fences and guards have been fully and duly made, and shall be kept in good and sufficient repair, such railroad corporation shall not be liable for any such damages, unless negligently or willfully done."

"SEC. 2. Any railroad company hereafter running or operating its road in this state, and failing to fence on both sides thereof against all live stock running at large at all points, *shall be absolutely liable to the owner of any live stock injured, killed or destroyed by their agents, employes or engineers,* or by the agents, employes or engines belonging to any railroad company running over and upon such road, or there being; *Provided,* That in case the railroad company liable under the provisions of this section, shall neglect or refuse to pay the value of any property so injured or destroyed, after thirty days' notice in writing given, accompanied by an affidavit of the injury or destruction of said property, to any officer of the company, or any station agent or ticket agent employed in the management of its business, in the county where the injury complained of shall have been committed, such railroad company, their

agents and employes, shall, in an action brought to recover
damages therefor, be held and they are hereby declared to
be liable to pay double the value of the property so injured,
killed or destroyed as aforesaid. *Provided further*, That
if the railroad company do not object to the value of the
property so injured or destroyed, as set forth in the notice
aforesaid, within ten days, it shall be considered and taken
as the true value; but if the said railroad company are
dissatisfied with the value as set forth in said notice, they
shall within ten days leave a written notice to that effect
at the residence or place of business of the owner of the
stock so injured or destroyed, and the value shall then be
ascertained and determined in accordance with the provi-
sions of section five of the general herd law." Comp.
Stat., 381.

In 1879, section 14 of the herd law was amended to read
as follows: "No cattle, horses, mules, swine or sheep shall
run at large during the night time, between sunset and
sunrise, in the State of Nebraska, and the owner or owners
of any such animal shall be liable in an action for dama-
ges done during such night time." Comp. Stat., 51.

It will be seen that there is no allegation that the com-
pany was free from fault, or that the accident was unavoid-
able. Even if the animals were trespassing on the track,
and were killed by the negligence of the company's em-
ployes in running trains, the company would be liable. A
railroad company like an individual is bound to use ordi-
nary care and diligence, so as not unnecessarily to injure
the property of others. *Ill. Cent. R. R. Co. v. Middle-
worth*, 46 Ill., 494. *Bemis v. Com.*, 42 Vt., 375. *Isbul v.
N. Y. R. R. Co.*, 27 Conn., 393. *C. & Z. R. R. Co. v.
Smith*, 22 Ohio State, 244. The answer is defective in
failing to state facts showing that the company was not
negligent. The demurrer therefore was properly sustained.
But we do not rest our decision upon this ground. The
question to be determined is, Was the failure of Brink-

man to restrain said animals at night a justification of the railroad company for neglecting to fence its track? We are not without the aid of authority on this question.

In *Spencer v. C. & N. W. R. R. Co.*, 25 Iowa, 139, the case was submitted to the court on the following agreed statement of facts: "The defendant is a corporation, and during the year 1865 was running and operating a railroad in this state and through the county of Tama. On the tenth day of October, 1865, in Salt Creek township, in said county, a train of cars, running on said defendant's railroad, ran against and killed a hog of the plaintiff's of the actual value of forty-five dollars, which hog at that time was running at large. Said railroad was not fenced on either side thereof at the point where said hog was killed, and the defendant had the right to fence said road at said point. More than thirty days before the commencement of this suit, the plaintiff served on the defendant a notice, accompanied by an affidavit of the killing of said hog, in which he stated and claimed the value of said hog at sixty-five dollars. The defendant did not pay or offer to pay to the plaintiff the value of said hog, or any part thereof, before the commencement of this suit. At the general election held in and for said county of Tama, in November, 1864, it was determined by a vote of the legal voters of said county that hogs and sheep should be prohibited from running at large in said county from and after the first day of August, A.D. 1865; and said vote, determination and prohibition was in force and effect in said county at the time said hog was killed."

The statute of Iowa was as follows: "Sec. 6. Any railroad company hereafter running or operating its road in this state, and failing to fence such road on either or both sides thereof, against live stock running at large, at all points where said roads have the right to fence, shall be absolutely liable to the owner of any live stock injured, killed or destroyed, by reason of the want of such fence or

fences as aforesaid, for the value of property so injured, killed or destroyed, unless the injury complained of is occasioned by the wilful act of the owner or his agent; and in the cases contemplated by this section, in order to recover, it shall only be necessary for the owner of the property to prove the injury or destruction complained of."

It will be seen that the facts in the Iowa case were substantially the same as in that under consideration, and that the statute contains the same provisions in substance as ours as to the liability in case of neglect to erect fences.

The court by COLE, J., say (page 141): "Under the ordinary and well recognized rules of law, it is very clear that since this plaintiff was himself guilty, not only of negligence but of the violation of a positive regulation or law, in suffering or allowing his hog to run at large, he could not recover. But our statute quoted above makes the railroad company absolutely liable for stock killed on its road if not fenced. This liability exists regardless of the question of negligence. * * * The agreed statement is silent as to whether the hog was running at large by accident, or by the careless or wilful act of the plaintiff. Unless it was the latter, plaintiff may recover; and this latter fact must be shown or the right to recover is not defeated. It is not shown in this case. * * * The only fact shown is that the hog was at large contrary to the regulation in that county. This alone, under our statute, will not defeat the plaintiff's right to recover."

This case seems to be adhered to by that court, and is cited in 27 Iowa, 284; 32 id., 562; 34 id., 338; 37 id., 348.

The Iowa statute contains the words "unless the injury complained of is occasioned by the wilful act of the owner or his agent," which ours does not contain; but these words neither increase nor restrict the liability of the company, as it will not be contended that the company would be liable for a wrong willfully committed by one not representing the company.

In *Corwin v. The N. Y. & E. R. R. Co.*, 13 N. Y., 42, the plaintiff was the owner of a pair of oxen worth $110, that were killed by the cars on the track of the defendant, the road at that point not being fenced, nor were cattle guards put in at the highway crossings. The New York statute was as follows:

"Every corporation formed under this act shall erect and maintain fences on the sides of their roads, of the height and strength of a division fence required by law, with openings or gates or bars therein, and farm crossings of the road for the use of the proprietors of lands adjoining such railroad; and also construct and maintain cattle guards at all railroad crossings, suitable and sufficient to prevent cattle and animals from getting on to the railroad. Until such fences and cattle guards shall be duly made, the corporation and its agents shall be liable for all damages which shall be done by their agents or engines to cattle, horses, or other animals thereon; and after such fences and guards shall be duly made and maintained, the corporation shall not be liable for any such damages, unless negligently or wilfully done."

The court say: "By the common law, the owner was bound to take care that his cattle did not leave his own lands and trespass upon those of his neighbor (*Promfret v. Ricroft*, 1 Wm's. Saund., 321), if they did, he was himself liable for damages in an action of trespass. It has long been settled in this state that there can be no recovery in an action on the case for negligence, where the negligence or misconduct of the plaintiff contributed to the injury; hence it was repeatedly decided prior to the general railroad act of 1848, that one whose cattle were trespassing upon the railroad at the time they received the injury, could not recover damages of the railroad company."  *    *    *    *
*    *    *    *    *    "But a new state of things has arisen. A power, but recently discovered and applied to the uses of man, has been appropriated as a motive

power to the moving of large and heavy bodies at a velocity before unknown, acquiring a momentum and speed endangering the lives of all animals coming in contact with the moving mass, whether locomotive or cars, and at the same time putting in jeopardy the lives and limbs of all those who are connected with the train. The danger to passengers, as science will demonstrate and as experience has shown, is great and imminent whenever the locomotive or cars in their rapid movement come in collision with any substance disturbing the regularity of the motion or speed acquired. An ox, cow, or horse upon the track presents a substance sufficient often to throw the engine and cars from the track, and thus cause a general wreck in which many lives are lost and limbs broken. To guard against these dangers it is necessary that all animals should be kept from the track. This can only be done by securing the track by fences and cattle guards at road crossings, or in some other way. Was it safe to leave this important matter to the thousand proprietors of lands along the road? Experience had shown that it was not. It had also shown that there was and would be much litigation growing out of the killing and injuring of cattle along the road, producing irritation and exciting angry, and at times vindictive passions. Under these circumstances the statute in question was enacted, and in my opinion, it changed very essentially the law. The general duty of erecting and maintaining fences on the sides of their roads is now imposed upon the railroad corporations. This duty is to be performed for the public benefit and security, and also for the benefit of the owners of cattle generally. In short, the corporations are to erect and maintain the fences; and until they do so, they and their agents are liable for all damages which shall be done by their agents or engines to cattle, horses, or other animals thereon. The language of the statute is general; it is not limited to damages done to cattle, etc., of the adjoining proprietor, or to cattle, etc.,

which were lawfully upon an adjoining premises, but it extends where there is no fence erected, to all cattle, horses, or other animals. The statute says nothing about negligence in either of the parties. It is, however, immediately added, that after such fences, etc., shall be duly made and maintained, the corporation shall not be liable for such damages, unless negligently or wilfully done."

DENIO, J., while concurring in the conclusion reached, filed a separate opinion, wherein he says (page 54) : "Having imposed this general and public duty, the legislature has proceeded to declare some of the consequences of its omission. The corporation in that case is to be liable for all damages which shall be done by their agents or engines, to cattle, horses, or other animals thereon. The defendant neglected to make cattle guards and fences; and for want of these safeguards, the plaintiff's cattle came upon the track of the railroad and were destroyed. * * * I am satisfied that the design of the section is to require the railroad companies to inclose their track within substantial fences, and guard it by ditches, by cattle guards, from the approach of animals wandering on the highway, and one method provided for securing that object is the provision charging the companies with damages for all injuries done to animals where they have disregarded the statute."

In *Fawcett v. The York & N. M. Rw. Co.*, 2 Eng. Law and Eq., 289, the plaintiff's horses being in the highway, passed through an open gate on to the railroad track and were killed. The statute required the railway company to erect gates across the highway at the crossings of the railway, and to keep them closed, except, etc. The defendant claimed that as the horses were unlawfully in the highway that therefore the company was not liable, because it was not bound to keep the gates closed against them; but the court held the company liable, as the law had imposed the duty of erecting gates and keeping them closed on the company, which duty it had failed to perform; the court would

not inquire how the horses came into the highway. See also *Shephard v. The B., N. Y. & E. R. R. Co.*, 35 N. Y., 641. *Bradley v. The same*, 34 Id., 427. Many other cases to the same effect might be cited.

In the case of the *Kansas P. Rw. Co. v. Mower*, 16 Kas., 573, it was held that a statute requiring a railroad company to fence its track was constitutional, being a power under the police power of the state. The first and second sections of the Kansas act are as follows:

"Section 1. Every railroad company or corporation in this state, and every assignee or lessee of such company or corporation, shall be liable to pay the owner the full value of each and every animal killed, and all damages to each and every animal wounded by the engine or cars on such railway, or in any other manner whatever in operating such railway, irrespective of the fact as to whether such killing or wounding was caused by the negligence of such railroad company or corporation, or the assignee or lessee thereof, or not.

"Sec. 2. In case such railway company or corporation, or the assignee or lessee thereof, shall fail for thirty days after the demand therefor by the owner of such animal, or his agent or attorney, to pay such owner or his agent or attorney, the full value of such animal if killed, or damages thereto if wounded, such owner may sue and recover from such railway company or corporation, or the assignee or lessee thereof, the full value of such animal or damages thereto, together with a reasonable attorney fee for the prosecution of the suit, and all costs in any court of competent jurisdiction in the county in which such animal was killed or wounded."

The third section provides upon what officers a demand for compensation may be made.

The fourth section authorizes the allowance of an attorney's fee when judgment is rendered for the plaintiff.

The fifth section is as follows: "This act shall not ap-

ply to any railway company or corporation, or the assignee or lessee thereof, whose road is inclosed with a good and lawful fence to prevent such animals from being on such road."

It will be seen that the statute does not provide that a railway company shall be absolutely liable for stock killed. In *Kansas Pacific Rw. v. Landis*, 24 Kas., 406, the railroad running through the defendant's enclosure was not fenced, and a mule belonging to the defendant, in such enclosure, strayed upon the track in the night time and was killed. There seems to have been a night herd law in force at that time requiring stock to be confined during the night time.

The court say: "The theory of the defendant is, that both parties were equal violators of the law, and that therefore plaintiff cannot recover; that of the plaintiff is that the defendant was alone the transgressor, and must therefore pay for the injury which it is conceded was done. The case really turns upon the question, whether the plaintiff was, as to the defendant, confining the animal at the time of the injury. That the defendant had not fenced its right of way, and was therefore liable under the stock law of 1874, is conceded, unless it appears that plaintiff was in equal wrong, and therefore within the case of *C. B. U. P. Rd. Co. v. Lea*, 20 Kas., 353, not entitled to a recovery. The language of the night herd law is, that the animal must be confined in the night time; in this case the animal was loose in a quarter-section, which as to the general public, was enclosed with a sufficient fence." The decision of the court turns upon the question of the defendant's alleged negligence.

In the case of the *C. O. R. R. Co. v. Lawrence*, 13 Ohio State, 66, cited by the plaintiff in error, the action was to recover for stock killed by negligence, and that was the issue.

In *P., Ft. W. & C. Ry. Co. v. Methven*, 21 Id., 586, the action was for killing stock, and the answer that the plaintiff permitted the animal to run at large contrary to the

statute.   It was held in effect that the answer stated a defense.

The court say, page 594: "In support of the opposite view, the strongest case to which our attention has been called is *Corwin v. The New York & Erie Railroad Co.*, 3 Kernan, 42.   The facts of that case are on all fours with the case in hand, but the difference between the terms of the statute of New York on the subject of fencing railroads and of our own, is quite sufficient to justify the difference in the conclusions.   After requiring railroad corporations to fence their roads, the statute of that state declares that "until such fences and cattle guards shall be duly made, the corporation and its agents shall be liable for all damages which shall be done by their agents or engines to cattle, horses, or other animals thereon."   By that statute it will be observed the immediate cause of the injury, to-wit: the act of "their agent or engines," is made the ground of liability, and that, too, without any reference to the fact whether the want of fences does or does not contribute thereto.   Yet it is conceded by the judges delivering opinions in that case, that "should it appear that the plaintiff drove his cattle upon the road, or in the neighborhood of the road, and left them there, or did any other positive act increasing the danger to his cattle, a very different question would arise.   The maxim, *Volenti non fit injuria*, would then apply."   But by our statute the liability is only incurred when the injury results "by reason of the want or insufficiency of fences, road crossings or cattle guards, or by any carelessness or negligence of such company, party, agent or agents thereof."   In the case of *D. & M. R. R. Co. v. Miami Co.*, 6 Central Law Journal, 436, the supreme court commission of Ohio rendered a decision in effect affirming that above cited from 21 O. S. In none of the cases cited by the plaintiff in error does the statute appear to be similar to ours.

The first section of our statute seems to have been copied

substantially from that of New York, while the second section is in effect the same as that of Iowa. The decisions of both of those states, therefore, are directly applicable. Indeed there is no room for a different construction. The statute requires all railroad companies which have been in operation six months to fence their track and put in cattle guards at road crossings, and provides that in case of failure to do so "they shall be absolutely liable to the owner of any live stock injured, killed, or destroyed by their agents, employes, or engines," etc.; and also declares that when such fences and guards have been fully and duly made, and shall be kept in good and sufficient repair, such railroad shall not be liable for any such damages, unless negligently or willfully done. Where they have failed to fence their track therefore, the question of negligence of the owner of the stock killed or injured does not enter into the case. The defendant in error, by merely permitting the animals killed to run at large in the night time, is not thereby deprived of the right to recover. The judgment must be affirmed.

JUDGMENT AFFIRMED.