THE ST. LOUIS & SAN FRANCISCO RAILWAY COMPANY
v. JOHN C. MOSSMAN.

HERD LAW; *Names on Petition; Presumption.* Where a party on a trial
attempts to prove that the county herd law (ch. 128, Laws of 1874) is
in force in the county, and shows by the records and files of the board
of county commissioners, and also by evidence *aliunde,* that the board of
county commissioners made an order putting or attempting to put such
herd law in force—the order reciting among other things that "a peti-
tion, signed by more than two-thirds of the legal voters" of the county,
was presented to the board, asking for such order, and the petition was
in fact presented to the board, with a number of names upon it equal to
more than two-thirds of the legal voters of the county, and sufficient no-
tice that such petition would be presented had previously been given,
and the order of the board was duly and properly published, but no evi-
dence was introduced on the trial, except the recital in such order, show-
ing that the names on said petition were in fact the names and the genuine
signatures of legal voters of the county, *held,* that in the absence of any-
thing showing the contrary, it will be presumed that the names on said
petition were in fact the names and the genuine signatures of legal voters
of the county.

*Error from Sedgwick District Court.*

THE facts of this case appear in *St. L. & S. F. Rly. Co. v.
Mossman,* 29 Kas. 694, and in the opinion herein.

*Sluss & Hatton,* for plaintiff in error.

*John Clark,* for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: This was an action brought by John C.
Mossman against the St. Louis & San Francisco railway com-
pany, under chapter 94 of the railroad stock law of 1874, to
recover for injuries done to two of the plaintiff's cows by the
railway company in the operation of its road. It appears
that the company's railway was constructed through the
plaintiff's land, which is situated in Sedgwick county, Kansas,
and that the land itself was inclosed with a lawful fence, but
that the railway track was not inclosed by any fence so as to

separate .it from the adjoining land. The plaintiff's cows were turned loose upon his own land and within his own in-closure, and they strayed upon the railway track within the plaintiff's own inclosure, and were there injured by the railway company in its operation of its road.

The defendant railway company in defense offered to prove as follows: That a petition purporting to contain two-thirds of the legal voters of Sedgwick county was presented to the board of county commissioners of said county, asking the board to make an order prohibiting, among other animals, neat cattle from running at large in such county; that proper notice of the presentation of such petition had been made; that the board of county commissioners made an order in accordance with the prayer of said petition; and that such order was duly published, and that all this was done in accordance with chapter 128 of the Laws of 1874, providing what animals may be prohibited from running at large in the several counties of the state. In offering to prove these matters, the defendant introduced parol evidence, and also introduced the records of the board of county commissioners, which contained said petition and said order and proof of publication of the notice of presentation of the petition and proof of the publication of the order. The defendant in fact offered to prove everything that was necessary to be proved to show that the order of the board of county commissioners prohibiting neat cattle from running at large was regularly and duly made and published and upon sufficient notice and petition, except that the defendant did not prove, unless pre-sumptively or by inference, that the persons whose names appeared upon the petition were legal voters of Sedgwick county; and for this reason the court below excluded all of such evidence, and refused to permit the defendant to introduce the same. The order of the board of county commissioners reads as follows:

"FEBRUARY 7th, 1876.
"A petition signed by more than two-thirds of the legal voters of Sedgwick county, Kansas, requesting the board of

22—30 KAS.

county commissioners of Sedgwick county, Kansas, to pass an order that all neat cattle, horses, mules, asses, swine and sheep, or any one or more of said classes of animals, shall be prohibited from running at large in said county of Sedgwick, as provided in chapter 128, Laws of 1874: it is therefore ordered by the board of county commissioners of Sedgwick county, Kansas, that all neat cattle, horses, mules, asses, swine and sheep, be and the same are hereby prohibited from running at large within the said county of Sedgwick."

The judgment of the court below was in favor of the plaintiff and against the defendant, and the defendant brings the case to this court, asking for a reversal of such judgment, upon the ground that said evidence was erroneously excluded.

It is claimed by plaintiff in error, defendant below, that the only question involved in the case is, whether or not, after proof by the record of the board of county commissioners, or otherwise, that under chapter 128 of the Laws of 1874 proper notice was given, and a petition purporting to contain over two-thirds of the legal voters of the county was presented to the county board, and the county board made an order, under the provisions of said chapter 128 and in accordance with the prayer of such petition, that certain stock should be prohibited from running at large in such county, and that such order was duly published, it will be presumed, in the absence of anything to the contrary, that the persons whose names appear upon said petition were legal voters of the county. And it seems from the record in the case, that this in fact is the only material question involved in the case.

In the case of the *K. P. Railway Co. v. Landis*, 24 Kas. 406, it appears that the night herd law of 1868 (Gen. Stat. of 1868, ch. 105, art. 1) was in fact in force in the township in which the plaintiff's mule was injured; and therefore that such animal was prohibited from running at large, and required to be kept confined in such township in the night-time. The plaintiff's land, in that case, was inclosed with a lawful fence, but the railway company's road, which ran through the land, was not inclosed by any fence so as to separate it from the plaintiff's land. The plaintiff turned his

mule loose in his own inclosure, and on his own land, and it strayed in the night-time upon the company's road, and was there injured; and it was held that the plaintiff could not recover.

In the case of *The St. Louis & San Francisco Railway Co. v. Dudgeon*, 28 Kas. 283, it appeared that the land on which the plaintiff turned his cow was inclosed with a lawful fence, but that the railway company's road, which ran through this land, was not inclosed by any fence. There was nothing in the record, however, showing whether the night herd law, or any herd law, or any law prohibiting cows from running at large, was in force in that county or township, or not. The cow was injured by the railway company in the operation of its road; and it was held that the plaintiff could maintain an action against the railway company, and recover for the injury done to his cow.

In the case of *Noffzigger v. McAllister*, 12 Kas. 315, 322, it was attempted on the trial by the plaintiff to show that the night herd law was in force where the defendant's colt committed certain trespasses, and for the purpose of showing this the plaintiff introduced an order of the board of county commissioners attempting to put such night herd law in operation. It was not shown, however, as a fact, nor attempted. to be shown outside of this order, that a petition had ever been presented to the board of county commissioners, and the order itself did not show, except by way of recital, that any such petition had ever been presented. Indeed, no evidence was introduced for the purpose of showing that the order had any validity, except the order itself; and this order did not find as a fact, except by way of recital, that any petition had ever been presented to the board, but simply recited that "Whereas a petition has been presented," etc., "and such petition appeared to be in accordance with the provisions of the statute, it is therefore ordered," etc. In that case it was held that such order of itself and alone was not sufficient evidence to prove that the night herd law was in force.

In the case of the *Comm'rs of Wabaunsee County v. Muhlenbacker*, 18 Kas. 129, 132, it was held, in a proceeding directly attacking the validity of a county road, that in order that a county road should be established, it must appear from the record of the board of county commissioners somewhere and in some manner that a petition for the road was presented to the board, signed by twelve householders of the county.

In the case of *Willis v. Sproule*, 13 Kas. 257, 264, it was held by the court, among other things, as follows:

"After a careful consideration of the question, we have come to the conclusion that whenever the records and files of the board of county commissioners purporting to establish a county road are regular in form, and contain everything which the statutes require to be preserved and kept in such cases, such records and files will prove, *prima facie* at least, that such road has been legally established and has a legal existence, and therefore that there is no necessity in the first instance to resort to evidence *aliunde* to prove the legal existence of the road. Such ought to be the law, and especially so where the existence of the road is attacked collaterally, as in this case. The strongest reasons and some very high authority sustain this view of the law. (*Anderson v. Commissioners of Hamilton County*, 12 Ohio St. 635, 642; *Beebe v. Scheidt*, 13 id. 406, 418.)"

The plaintiff in error, defendant below, also cites the following cases as sustaining his view of the case: *Ryan v. Varga, &c.*, 37 Iowa, 78; *Evansville &c. Rly. Co. v. City of Evansville*, 15 Ind. 420, 421; *The People v. City of Rochester*, 21 Barb. 656.

The defendant in error, plaintiff below, on his side of the case, cites the following authorities: *Donlin v. Hettinger*, 57 Ill. 348; *Clark v. Thompson*, 47 Ill. 25; *Granite Bank v. Treat*, 18 Me. 340; *Barrett v. Crane*, 16 Vt. 246; *The State v. Kimbrough*, 2 Dev. (N. C.) 431; *Straughen v. Inge*, 5 Ind. 157; *Mossman v. Forrest*, 27 Ind. 233; *The State v. Shreve*, 3 Green (N. J.), 57; *N. J. Rld. & Trans. Co. v. Suydam*, 2 Harr. (N. J.) 25.

While these cases have some application to the question of

jurisdiction of inferior tribunals, scarcely one of them has any application to the exact question involved in the present case; and hence we think it is unnecessary to make any special comment upon them.

The plaintiff in error, defendant below, claims that the present case is controlled by the decision made in the case of the *K. P. Rly. Co. v. Landis*, 24 Kas. 406; while the defendant in error, plaintiff below, claims that it must be controlled by the decision made in the case of *Noffzigger v. McAllister*, 12 Kas. 315, 322. Now if the evidence offered to be introduced on the trial of this case by the defendant below was sufficient to show that the county herd law ( chapter 128, Laws of 1874 ) was in operation in Sedgwick county at the time the plaintiff's cows were injured, then we think that the case of the *K. P. Rly. Co. v. Landis*, ante, governs; but if said evidence was not sufficient, then we would think that the case of *Noffzigger v. McAllister*, ante, would have application, and the case of the *St. L. & S. F. Rly. Co. v. Dudgeon*, ante, would govern. The so-called night herd law requires that stock shall be confined in the night-time, while the so-called county herd law requires that stock shall be prohibited from running at large in the county. The main object, we suppose, is to require owners of the particular stock to take care of the same, and not allow it to trespass on the premises of others. The words " confined " in one act, and "prohibited from running at large" in the other act, mean substantially the same thing.

In our opinion, the evidence offered by the defendant below was sufficient. It was certainly sufficient in every respect, except with regard to the question whether the signatures to the petition presented to the board of county commissioners, asking for the enforcement of the county herd law, were the genuine signatures of two-thirds of the legal voters of Sedgwick county. The evidence clearly showed that there were names enough on the petition, and more than names enough, provided they were legal voters; but the evidence did not show directly, or in any other manner except by presumption or

implication, that such names were the names of legal voters. The evidence tending to show that they were legal voters, is as follows: Proper notice under the statute was given that such a petition would be presented to the board of county commissioners, asking for such herd law; a petition was presented containing the requisite number of names. There does not appear to have been any objection to the petition on the ground that it did not contain the names of two-thirds of the legal voters of the county. The board of county commissioners recited in its order that "a petition signed by more than two-thirds of the legal voters of Sedgwick county," etc., and made an order which could not legally have been made except upon the theory that the petition was in fact signed by more than two-thirds of the legal voters of Sedgwick county; and the commissioners afterward attempted to put such order in operation. Just what evidence the board of county commissioners had before it to show that the signatures on said petition were the genuine signatures of legal voters, is not shown. We think it ought, however, to be presumed under the circumstances that the board had sufficient evidence. The records and files of the board of county commissioners not only show the order made by the board, but also contain the said petition, with proof that proper notice of its presentation had been given, and proof that the order itself had been properly published. It will therefore be seen that this case differs very materially from the case of *Noffzigger v. McAllister,* ante. In that case there was no showing, except by the recitals of the order itself, that any petition had ever been presented to the county board, or that any other proceedings had ever been had, except the mere making of the order by the county board. That a petition apparently sufficient was presented to the county board in the present case, is clearly shown, not only by the recitals of the order of the county board, but also by the files preserved in the office of the county clerk, and by the oral evidence of the person who was county clerk at the time the order in the present case was made, and also by the present county clerk.

We think the evidence was sufficient to show presumptively that the herd law (ch. 128, Laws of 1874) is and was in force in Sedgwick county at the time the plaintiff's cows were injured; and therefore we think the court below erred in excluding said evidence; and for this error the judgment of the court below will be reversed. The former judgment rendered by this court will be set aside and vacated, and the judgment of the court below will be reversed, and the cause remanded for a new trial.

All the Justices concurring.