THE BURLINGTON AND MISSOURI RIVER RAILROAD COMPANY, PLAINTIFF IN ERROR, v. WALKER WEBB, DEFENDANT IN ERROR.

**Railroads:** LIABILITY FOR STOCK KILLED: NEGLIGENCE. Under the provisions of section one of the act of 1867, Compiled Statutes 1835, Ch. 72, where a railroad corporation neglects to maintain fences and cattle-guards along its road, and horses get thereon, and are injured or killed by the engines or trains running on the road, the railroad company is liable to the owner in damages therefor, and the negligence of the owner in allowing the horses to escape from him will constitute no defense to the action.

ERROR to the district court for Johnson county. Tried below before BROADY, J.

*T. M. Marquett* and *J. W. Deweese*, for plaintiff in error.

*T. Appleget & Son*, for defendant in error.

REESE, J.

The original action in this cause was instituted for the recovery of damages resulting from injury to a team of horses, caused by a train of cars belonging to plaintiff in error. The allegation of the petition in which the injury to the property is charged is as follows: "That on or about the second day of August, 1882, said defendant was operating a railroad through Johnson county, state of Nebraska, said railroad having been open for use for more than six months in and through said county, and while so operating the same, at the time above stated, and in the day-time, at a place on said road therein where it was required by law to fence its track, but had failed to do so said defendant, by its agents and employes, carelessly and negligently ran an engine and train of cars upon and over one team of horses and one lumber wagon, the same being the property of this plaintiff, and of the value of $283.00, by reason of which said team of horses was so injured as to be entirely worthless, and it became necessary to kill the same."

The answer admits the injury to the horses, and that the railroad was not fenced, but alleges that the horses were harnessed and hitched to the wagon, equipped and ready for traveling as a team, and that while so hitched the defendant in error left the team standing near the railroad track without anyone to manage and control it, and without being secured or fastened, while he went away from it, and while it was thus left the train came along, at which the team became frightened and dashed across the railroad track in front of the train, and was injured without any fault or negligence on the part of plaintiff in error, and that the carelessness and negligence of defendant in error contributed to the injury complained of. The reply was a denial of the allegations of the answer.

Upon the trial plaintiff in error sought to present to the

jury, as a defense, the question of the contributory negligence of defendant in error, but its prayers for instructions in that direction were refused by the court. This action of the trial court is assigned for error. Two questions are presented for decision. The first contention of plaintiff in error is, that under the issues presented by the pleadings the question of the negligence of both parties was made a prominent one, and that upon the issue so presented the jury was called to pass, and therefore it should have been submitted with proper instructions for their guidance.

By comparing the petition with section one of the act of June 22, 1867, which we will presently notice more fully, it will be observed that the pleader brings himself directly within its provisions. The team was injured by the engine of the railroad company on the track and at a point where the company was required by law to fence its track, but had failed so to do for more than six months. This, with the other allegations of the petition, constituted a cause of action. The fact that plaintiff in error pleaded a statement of facts which did not constitute a defense, and that these facts were denied, did not render it absolutely essential that these immaterial facts or questions (if they were such) should be submitted to the jury.

The whole case must depend upon the second question presented, which is, would the contributory negligence of defendant in error relieve plaintiff in error from its obligation to pay for the injury done to the horses of defendant in error upon its track at a place where it was unfenced, and where, by law, the railroad company was required to fence? The section above referred to is as follows:

"That every railroad comporation whose line of road or any part thereof is open for use shall, within six months after the passage of this act, and every railroad company formed or to be formed, but whose lines are not now open for use, shall, within six months after the lines of such railroad

or any part thereof are open, erect and thereafter maintain
fences on the sides of their said railroad, or the part there-
of so open for use, suitably and amply sufficient to prevent
cattle, horses, sheep, and hogs from getting on the said
railroad, except at the crossings of public roads and high-
ways, and within the limits of towns, cities, and villages,
with opens, or gates, or bars, at all the farm crossings of
such railroads, for the use of the proprietors of lands adjoining
such railroad, and shall also construct, where the same has
not already been done, and hereafter maintain at all road
crossings now existing or hereafter established, cattle-
guards suitable and sufficient to prevent cattle, horses,
sheep, and hogs from getting onto such railroad, and so
long as such fences and cattle guards shall be made after
the time hereinbefore prescribed for making the same shall
have elapsed, and when such fences and guards, or any
part thereof, is not in sufficiently good repair to accomplish
the objects for which the same is herein prescribed is in-
tended, such railroad corporation and its agents shall be
liable for any and all damages which shall be done by the
agents, engines, or trains of any such corporation, or by
the locomotives, engines, or trains of any other corporations
permitted and running over or upon their said railroad, to
any cattle, horses, sheep, or hogs thereon; and when such
fences and guards have been fully and duly made, and
shall be kept in good and sufficient repair, such railroad
corporation shall not be liable for any such damages, un-
less negligently or willfully done."    Comp. Stat., Ch. 72.

By a fair analysis of this section we think its provisions
as applicable to the case at bar are, that the railroad com-
pany shall erect and maintain fences on the sides of its
track, suitably and amply sufficient to prevent horses from
getting on the railroad (except at places other than that
where the injury occurred), and in case of its failure so to
do it shall be liable for *any* and *all* damages which shall
be done by the engines or trains of the company to any

horses thereon. If we are correct in this it is clear that the simple negligence of the owner of the stock injured can be no defense and the ruling of the district court was correct. It may be said that this construction of the act under consideration would render the railroad company liable for injury to stock when the owner had driven them and left them upon the road. But when we consider the purpose of the act, and give it that reasonable construction which such statutes require, no such conclusion necessarily follows. The maxim that "no injustice is done to the consenting person, that is, by a proceeding to which he consents," would then apply. Besides, such an act, if done for the purpose of obstructing the track, would be a violation of the criminal law of the state. It cannot be said that the protection of stock upon a railroad track was the sole object of the law. When we consider that these tracks are incessantly traversed by trains running at a high rate of speed, all of which are carrying persons, and many of which are loaded with passengers, and that it is absolutely necessary to their safety that the track should be kept clear of all obstructions which might endanger their lives, it is apparent that the purpose of the legislature was that, first, perhaps, passengers and employes on the train should be protected; and second, that stock near the line of the road might not be destroyed. It was therefore made the *duty* of the railroad company to fence its road. The language of the statute is, that "*every railroad corporation whose line of road* \* \* \* is open for use *shall* fence the road."

As said by Denio, J., in *Corwin v. R. R. Co.*, 13 N. Y., 54 : "Having imposed this general and public duty, the legislature has next proceeded to declare some of the consequences of its omission. The corporation in that case is liable for all damages which shall be done by their agents or engines to cattle, horses, or other animals thereon."

The section under consideration is substantially the same as section 42 of the railroad law of New York, enacted in

1848, which has been construed by the courts of that state substantially as herein held. See *B. & M. R. R. Co. v. Brinkman,* 14 Neb., 70, and cases there cited.

The question presented in the case last cited was not identical with the case at bar, and called for a construction of section two of the act of 1867, which applies to "live stock running at large." This section is substantially a copy of the Iowa law, and has been repeatedly construed by the courts of that state. But it must be observed that there is a great difference between the provisions of the two sections, and as section one of our law is not found in the Iowa act we can not look to the decisions in that state for light in its construction.

We are reminded that in construing statutes we are to give force to all their parts, and if section one was intended by the legislature to be as sweeping in its provisions as is here contended for, what could be the use of the second section, and why the provision that a railroad company should be "absolutely liable" for stock injured or killed? To this we reply that, to our mind, the purpose of the second section is, in the main, to afford to the owners of stock running at large a speedy and effectual remedy for the collection of their damages. Stock "running at large" has reference to stock under the control of no person; free commoners, as it is sometimes termed. If stock are *running at large,* not under the dominion of the owner, there can be no defense to an action brought for damages where they have been injured or killed by trains, at a point where the company were required to fence, but had failed to do so. Again, the section provides that certain proceedings may be had for the purpose of ascertaining the value of stock injured or killed, and further, that in case of the failure of the company to pay the value thus found the measure of damages shall be double the value of the property killed or destroyed. To our mind the provisions of section two may all be given force, and no conflict can be found between the two sections. We are aware that the

"double damage" part of section two has been held uncon-
stitutional (*A. & N. R .R. Co. v. Baty*, 6 Neb., 37), but
that fact, even if correct (and upon which we express no
opinion), can not militate against the view here expressed
as to the purpose of the legislature in enacting the law.

By the first section it is declared that the company must
fence its road, that the fences must be amply sufficient to
prevent cattle, horses, sheep, and hogs from getting on the
track, and in case of default the railroad company shall be
liable for any and all damages which shall be done by the
engines or trains running on the road. No allusion is
made to any conditions with regard to care, or the want
thereof, either by the company or the owner of the stock,
as affecting the liability of the company, excepting in the
last clause of the section where it is provided that if the
proper fences, etc., are constructed and maintained the
railroad company shall not be liable unless the injury is
negligently or willfully done.

We therefore hold that the negligence of defendant in
error, if any existed, was no defense to the action, and that
the judgment of the district court must be affirmed.

JUDGMENT AFFIRMED.

MAXWELL, J., concurs.

COBB, CH. J., dissents.