RANSOM OSBORNE v. IRA KIMBALL.

1. STATUTE OF FRAUDS — *Part Performance.* A parol contract that is not to be performed within a year from the making thereof, and not relating to land, is not enforceable or taken out of the operation of the statute of frauds by a part performance, as that equitable doctrine applies only to contracts relating to land.

2. TRESPASS — *Animals, Running at Large.* Where animals prohibited from running at large are turned loose on premises in a herd-law county which are not inclosed or fenced so as to confine ordinary cattle, and where there are openings in a fence partially built around such premises, through which cattle can and do readily pass to the lands of another, whose crops they there destroy, such animals are running at large within the meaning of the herd law of 1872, and the party injured has a lien thereon, without regard to fences, for the damages committed by them.

*Error from Butler District Court.*

REPLEVIN, by *Osborne* against *Kimball.* Judgment for defendant, at the May term, 1887. The plaintiff brings the case to this court. The opinion states the case.

*Redden & Schumacher,* and *N. A. Yeager,* for plaintiff in error.

*Hamilton & Cubbison,* for defendant in error.

The opinion of the court was delivered by

JOHNSTON, J.: Ransom Osborne and Ira Kimball are, and for several years last past have been, owners of adjoining farms

in Butler county, where the herd law of 1872 is in force.  On April 19, 1886, Osborne's cattle to the number of about 56, which were being fed on his farm, strayed upon the adjoining premises of Kimball, and there ate and destroyed quite a number of shocks of corn belonging to Kimball.   Kimball at once took possession of the cattle, and claimed the right under the herd law to hold them until the damages which they had done were paid.   On the following day Osborne instituted an action of replevin for the recovery of the cattle, and under an order of delivery issued therein they were delivered to him by the sheriff, and he still holds possession of the same.

It was admitted on the trial of the replevin action that Osborne was the owner of the cattle, and that he demanded possession of them from Kimball before bringing the action; and further, that the cattle described in the petition went upon the premises of Kimball and damaged his crops to the extent of $8.   The case was submitted to the court without a jury, and it found and adjudged that Kimball was entitled to the possession of the cattle, and that the value of his right of possession was $8.   The principal objection to the judgment is, that the court excluded testimony of a parol contract relating to the building of a fence between the two farms.   Osborne testified that in 1880 he and Kimball entered into an agreement by which each was to build a certain share of the partition fence between the farms.   There was some fence on the line at that time, and subsequently each built portions of a fence, although it appears that Osborne did not build what he called his portion for more than a year after the agreement was made, and it seems that the fence never was fully completed, as there were gaps or openings left through which cattle could and did pass.   The division line intersected a creek, where it was difficult to make a fence, and there they deviated from the line. At one point Kimball built around the bend of the creek, away from the line, on his own land.   In answer to a question as to what agreement was made between them, Osborne gave the following answer:

"I don't know that there was anything in particular, any

more than he was to build a fence to keep my stock out, and I was to build a fence to keep his stock out, and so on. That is all I recollect about it. I don't recollect that there was anything in particular said. I guess there was not. Each was to build a fence that was to keep the other's cattle out."

He stated that the contract was made in 1880, and that it was a permanent one, to continue always. The court heard all the evidence offered by the plaintiff tending to establish the parol contract, and thereafter, on motion of the defendant, very properly excluded the evidence and refused to consider the same. The contract was not in writing, and as it was to continue always it falls within the condemnation of the statute of frauds, which provides that no action shall be brought "upon any agreement that is not to be performed within the space of one year from the making thereof, unless the agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing and signed by the party to be charged therewith, or some other person thereunto by him or her lawfully authorized." (Comp. Laws of 1885, ch. 43, § 6.) It seems to be conceded that the contract was one which did not admit of possible performance within one year; but it is contended that it is taken out of the operation of the statute of frauds by partial performance. The doctrine of partial performance is not applicable to this class of contracts. It is confined only to those relating to lands, the non-execution of which would operate as a fraud upon the party who had made partial performance to such an extent that he cannot be reasonably compensated in damages. It is an equitable principle frequently invoked in actions for the specific performance of parol contracts for the purchase of land, under which possession has been taken, improvements made, and where there has been payment or partial payment of the purchase-price. The courts are slow to introduce additional exceptions or to depart further from the strict letter of the statute of frauds, and even in the contracts of the class mentioned full payment of the purchase-money is not a sufficient performance to take them out of the statute. (*Nay v. Morgrain,*

24 Kas. 80.) We have heretofore had occasion to deny the enforcement of contracts other than those relating to land, and which were not to be performed within one year, where they had been partially performed, and we see no reason to extend the doctrine of enforcing such oral contracts upon the ground of part performance. (*Wolf v. Dozer*, 22 Kas. 436; *Wonsettler v. Lee*, 40 id. 367; same case, 19 Pac. Rep. 862.) *Bard v. Elston*, 31 Kas. 275, is cited by the plaintiff as an authority to sustain his position. That was a parol lease for a term of six years, under which the lessee had taken and held possession for over five years, planted, cultivated and raised hedge fences, built houses, dug wells, and paid taxes on the land, and otherwise improved the same; and it was held that this was such a part performance of the contract as would take the case out of the statute of frauds and render the lease valid for the full term. In deciding that case, however, it was held that "parol leases for more than one year in order to become valid by part performance should generally be such as would by such part performance become substantially a purchase of an interest in the real estate." The contract in question had no such characteristic, and cannot be regarded as falling within any of the exceptions to the statute. It was simply an agreement that each should so fence as to protect his own premises and prevent his cattle from passing upon the premises of the other; and under the authorities the equitable doctrine of part performance is never applied to this kind of cases, but is confined alone to contracts relating to land. (*McElroy v. Ludlum*, 32 N. J. Eq. 828; *Brittain v. Rossiter*, 18 Am. L. Reg. N. S. 716; *Emery v. Smith*, 46 N. H. 151; *Wheeler v. Frankenthal & Bro.*, 78 Ill. 124; *Creighton v. Sanders*, 89 id. 543.)

1. Statute of frauds—part performance.

The exclusion of the testimony relating to the oral contract disposes of most of the important questions that have been discussed in the case, including the one made that the negligence of Kimball in failing to fence contributed to the injury. The herd law, which provides that "any person injured in property by the running at large of any of the animals speci-

fied in the said order of the board of commissioners shall have a lien, without regard to fences, upon the animal so running at large for the full amount of all damages committed by them upon the property of said person, from the time of the commission of said injury, and may take the same into custody until all such damages are paid," was in operation

2. Trespass—animals, running at large.

in the county of Butler, and as we have seen, it had not been waived or abrogated as between the parties to this action by contract. Osborne's cattle must be held to have been at large, within the meaning of this law. There was an attempt to fence and to make an inclosure where his cattle were fed, but it was not such an inclosure as would confine ordinary cattle or prevent them from passing readily on the premises of another. There were, and for some time had been, gaps or openings in the fence intended as an inclosure of Osborne's premises, through which the stock could easily go upon the premises of Kimball. In speaking of the law, it has been said that "the main object we suppose is to require the owners of the particular stock to take care of the same and not to allow it to trespass upon the premises of others. The words 'confined' in one act, and 'prohibited from running at large' in the other act, mean substantially the same thing." (*St. L. & S. F. Rly. Co. v. Mossman,* 30 Kas. 341.) It will not do to say that an owner of stock may turn them loose upon his premises, which are not fenced so as to confine ordinary cattle, or where the inclosure is a mere pretense, and that he will thus be relieved from the consequences of the herd law. Such a holding would practically render the law ineffectual and defeat the purpose of its enactment. If premises are inclosed with a legal fence, such as is ordinarily built to confine stock, and there should be an accidental escape of the stock, they could not be said to be at large, within the meaning of the herd law. In this instance, however, the premises were not surrounded by a fence, as there were openings two or three feet wide through which cattle could and did pass; and these had existed for some time. The cases referred to, where stock passed from the owner's land upon the track of

the railroad running through the same, are not entirely applicable to cases of this character, because, first, the railroad companies have ordinarily only an easement over the land, and not the exclusive control and possession of the same, as the individual owner has; and second, there is a law of equal force with the herd law making railroad companies liable, even in herd-law counties, to parties whose stock is killed by their trains.

We think the plaintiff's cattle were running at large, within the meaning of the herd-law act, and that the judgment of the district court in favor of the defendant must be affirmed.

All the Justices concurring.