## PENTLARGE *v.* BEESTON and another.

*(Circuit Court, E. D. New York.   April 13, 1880.)*

PATENT—INJUNCTION—LICENSE.—An injunction founded upon consent, enjoining the use of an invention, is not necessarily deprived of vitality by the granting of a conditional license.

SAME—ATTACHMENT—SUIT PENDING IN STATE COURT.—An attachment will not be issued for the violation of such injunction while a suit is pending in a state court of competent jurisdiction, concerning the validity of the agreement upon which the decree for the injunction was founded, and in relation to the legality of the revocation of the license which authorized the use of the invention.

*Preston Stevenson,* for Pentlarge.

*Tracy Catlin Brodhead,* for Beeston.

BENEDICT, J.   This case comes before the court, upon a motion on the part of the defendants, for the stay of a proceeding instituted by the plaintiff in this court, to punish the defendants for contempt, because of a violation by them of a perpetual injunction, whereby they were restrained from making a certain form of bungs for casks, described in a patent issued to this plaintiff, and known as re-issue No. 5937.

Of the many proceedings had in this court between these parties, arising out of this patent, the following must be mentioned, in order to an understanding of the questions presented by this motion.

In April, 1877, the plaintiff filed his bill in this court against the above named defendants, in which he set forth the issuing of the said patent, and the infringement thereof by the defendants, and prayed to be awarded damages for said infringement, and a perpetual injunction to restrain the defendants from using his invention in the future.   After issue had been joined in that action, and on the third day of January, 1878, an agreement of compromise was entered into between the plaintiff on the one side, and the defendants on the other, in which it was provided, among other things— *First,* that the defendants should admit the validity of the plaintiff's patent, and his exclusive right to the invention therein described, and that the defendants should cease infringing upon his rights as sole owner of the said invention;

*second*, that the defendants should consent to a final decree in this action awarding the plaintiff the sum of $2,000 for his damages by reason of past infringements, and directing that the defendants be perpetually enjoined from using the said invention in the future; *third*, that upon the entry of such a decree, and the payment of the damages agreed on, the plaintiff should grant to the defendants, and the defendants should accept, a license to use the said invention.

The terms of the license were particularly specified in this agreement of compromise, and one of its provisions is that in case of a failure of the defendants to pay the royalty specified therein, or maintain the selling price of the bungs at the agreed rate, the plaintiff should be entitled to revoke the license, by giving written notice of revocation to the defendants. In pursuance of this written contract between the parties a final decree was entered in this action, according to the prayer of the bill, and awarding the plaintiff $2,000 for his damages, and directing the issue of a perpetual injunction forbidding the use of the said invention by the defendants. Upon the entry of such decree the defendants paid the damages and costs, and received from the plaintiff a license to use the invention as provided in the agreement of compromise.

Under this license the defendants continued to manufacture bungs, of the form described in the plaintiff's patent, until July 5, 1879, when the plaintiff gave notice of revocation of the license, upon the ground that it had been violated by the defendants by selling bungs at less than the prescribed price. The defendants disregarded this notice of revocation of the license and continued to use the plaintiff's invention. Whereupon the plaintiff applied to this court for an attachment against them to enforce their obedience to the perpetual injunction theretofore issued out of this court, according to the direction in the final decree herein. A reference was thereupon ordered, to take proofs respecting the acts charged upon the defendants, and also respecting the circumstances under which the notice of revocation of the license had been given. Pending that reference the defendants make the present applica-

tion that all further proceedings to punish them for contempt be stayed.

In support of this application it is first contended that the perpetual injunction was rendered of no effect by the granting of the license. But it seems plain that the granting of a license by the plaintiff could not deprive of vitality a writ of injunction issued by the court in pursuance of its final decree. In the absence of any order of the court to recall the writ, or suspend its operation, I cannot doubt that it still remains alive, and affords foundation for a commitment of the defendants, if equity requires such action on the part of the court. "Perpetual injunctions are founded on the equity of relieving a man from the necessity of bringing action after action." Kerr on Injunction, 44. "The operation of such au injunction may be suspended for a given time by the action of the court." Kerr, 47. But unless suspended or recalled by the court a perpetual injunction, issued upon final decree, continues in existence, and may be enforced at any time.

The real question raised by the license is not as to the power of the court to compel obedience to the injunction, but whether the plaintiff has not, by granting the license, acquiesced in the breach of the injunction, and so deprived himself of the right to demand a commitment of the defendants. *Mills* v. *Cobby*, 1 Merriville, 3; Kerr on Injunctions, 578.

Upon this question it may be said that if the understanding between the parties had been that the injunction should be superseded, there would be little difficulty in holding that the plaintiff had waived his right to demand a commitment of the defendants, notwithstanding their omission to apply for a suspension of the injunction by the court. But such could not have been the intention of these parties. The license forms part of the agreement of compromise of January 3, 1878, made prior to the entry of the final decree. That agreement provides in express terms, not only for the license, but for a final decree and perpetual injunction. The careful provisions in this contract for the issuing of a perpetual injunction forbid the conclusion that it was intended that the

injunction, when issued, should be forever inoperative, and of no avail to the plaintiff.

To suppose such an intention, is to suppose that the provision for a perpetual injunction was intended to be vain words, without meaning or effect. Moreover, the acts of the parties are not in harmony with such an understanding, for not only was a final decree directing a perpetual injunction entered upon notice, without objection, but the writ of injunction was actually issued in pursuance of the decree and served upon the defendants by the marshal, all without objection or question by the defendants. The only understanding consistent with the terms of the compromise and the acts of the parties is that it was intended that the plaintiff should make no complaint respecting the disobedience of the injunction during the existence of the license, but that in case of a termination of the license the injunction should be available to the plaintiff for the protection of his rights as fixed by the final decree.

The next position taken by the defendants is that the plaintiff himself was the first to break the agreement respecting the price at which the bungs were to be sold, and that the notice of revocation was not given in accordance with the terms of the license, or because of any substantial violation of the license by the defendants, but for the purpose of compelling the defendants to buy the plaintiff's patent.

If the defendants were now insisting upon their right to the license there might be a question whether it would be competent for the court to pass on the effect of the notice of revocation upon a motion to attach the defendants for contempt. Although in this instance the license is in writing, and no controversy exists as to its terms, the remarks of the supreme court in *Hartell* v. *Tilghman*, (99 U. S. R. 556,) are calculated to render it doubtful whether, in the absence of a termination of the license by mutual agreement or final decree, a revocation of the license could be held to have been effected by the notice given. But the difficulty with the defendants' position is that they now deny the plaintiff's power to grant

a license, and assert a right to use the invention described in the plaintiff's patent without regard to the license, and in fact are now using that invention under a claim of right outside of the license.

So long as the defendants maintain their present attitude in regard to the plaintiff's patent, the circumstances attending the notice of revocation of the license, as well as the effect of that notice, are wholly immaterial.

The next position taken by the defendants is that they have become entitled to have the agreement of compromise set aside, because of the discovery of a fact of which they were ignorant at the time of entering into that agreement, viz.: that there was in existence, prior to the date of the plaintiff's invention, an English patent, issued to one Taylor, for the same invention described in the plaintiff's patent; that the Taylor patent has expired, and all persons are now at liberty to use the invention therein described; that they have presented those facts to the supreme court of this state by a suit against this plaintiff, which they were compelled to bring in a state court, because all the parties are citizens of this state, in which suit they have prayed that the agreement of compromise made between them and the plaintiff may be set aside, and the plaintiff perpetually enjoined from enforcing said agreement, or in any way availing himself thereof.

In support of this position the defendants have exhibited to this court the complaint filed in the state court, as well as a provisional injunction issued by the state court, directing the plaintiff, among other things, to refrain in any manner from interfering with or disturbing these defendants in making, using and selling the bungs which the defendants were licensed to sell by the license already referred to, and from interfering with the defendants' dealings with other persons respecting said bungs by intimidating or preventing the customers of the defendants from dealing with them for said bungs. Notwithstanding the scope of this injunction issued out of the state court, the question whether the pending proceeding to punish the defendants for contempt shall go on or be stayed is to be decided by this court, and not by the state

court; nor has the contrary been contended here. But it is contended that the contempt proceeding will, of necessity, involve the question as to the effect of the invalidity of the agreement of compromise upon the liability of the defendants to punishment, and that this question cannot, with propriety, be passed on by this court at this time, upon a motion to commit the defendants, but should be left to be determined by the suit brought in the state court.

To this position taken by the defendants I have given careful attention, and with a sincere desire not to deprive the plaintiff of any right that he may have to ask an adjudication of this question at the hands of this court, and my conclusion is that the plaintiff will be deprived of no right by staying, for the present, the proceeding to punish the defendants for contempt; and that the action taken by the state court renders it proper that such proceedings should be stayed until the state court shall have determined the questions of which it has become possessed by the suit there instituted. That the state court has jurisdiction to entertain that suit, and to determine whether the license has or has not been lawfully revoked, and whether the agreement of compromise shall be set aside or upheld, must be deemed to be settled by authority. *Hartell* v. *Tilghman*, (and cases cited,) 99 U. S. R. 574. It is true that a determination respecting the validity of the agreement of compromise may be made to depend upon the construction to be given to the two patents in question, and so a question arising under the patent laws be determined by a state court; but such a question is not necessarily to be decided by the state court, for it may be held that ignorance of the existence of the Taylor patent, whatever may be its terms, affords no ground upon which to set aside the agreement of compromise.

It seems, therefore, that the jurisdiction of the state court to entertain the action there brought is not open to be questioned. Thus much being conceded, it is impossible to deny the competency of the state court to determine whether in equity the plaintiff should be allowed to derive advantages from the agreement of compromise, or to treat the license as

revoked during the pendency of the suit 'there brought; and inasmuch as the state court, after hearing, has decided that during the pendency of the suit the plaintiff is not entitled to derive any advantage from the agreement of compromise, or from his notice of revocation of the license, that determination would seem to entitle the defendants to a stay of a proceeding of the character now pending against them in this court; for that proceeding arises out of acts which the provisional injunction issued by the state court permits the defendants to do during the pending of the state court suit. So that, should a commitment of the defendants be the result of the pending proceeding in this court, the defendants will be punished by this court for doing acts in all respects similar to the acts which a competent court, in an action between the same parties, has declared the defendants to be entitled to do, until the question of the validity of the agreement of compromise has been passed on, and that upon a motion. Still further, the pending contempt proceeding will be of no avail to the plaintiff unless it be followed so far as to compel the defendants to desist in future from manufacturing bungs of the description covered by the license. The very acts permitted by the provisional injunction of the state court are, therefore, in reality the acts sought to be stopped by the pending proceeding in this court. It can hardly be that the plaintiff is entitled, as a matter of right, in this way, and by motion, to bring in review before this court the action of the state court, or, by means of a motion to attach the defendants, call upon this court to pass upon questions of which the state court has become possessed by a formal suit there duly instituted.

It has been strongly insisted on behalf of the plaintiff that his rights in this court rest upon the final decree of this court, and cannot be affected by any action of the state court in the suit referred to. But the fact that the final decree of this court was made by consent, and not upon a determination of the court, and that such consent is contained in the agreement of compromise, cannot be disregarded. In a certain modified sense the decree is part of the contract now before

the state court, so that, while much question may be made as to the effect of a decree of the state court setting aside the agreement of compromise upon the decree entered in this court, equity would seem to require that, in case the agreement of compromise be set aside by the decree of the state court, such a decree be treated in this court as a sufficient ground for refusing to commit the defendants for acts done in violation of a perpetual injunction, that has its foundation in that agreement.

These considerations have impelled me to the conclusion that the defendants are entitled to the relief they now seek. In coming to the conclusion reached, after full advisement, I have not been unmindful of the consideration pressed upon me so earnestly, that, unless the permanent injunction of this court be now enforced, the plaintiff, although he has a most formal admission from the defendants of the validity of his patent, and, in addition, has the decree of this court, obtained upon a compromise and without fraud, sustaining his patent in all respects, and although infringement of his patent is admitted, is in no better position than he would be if the agreement of compromise had been declared void, the decree against the defendants in this action set aside, and a decree adverse to his patent rendered.

But this consideration, strong as it is, is one to be addressed to the state court, which has acquired jurisdiction over the agreements of compromise upon which the plaintiff's decree is founded, and where full power exists to relieve any hardships that have arisen from its action. An order must accordingly be entered staying the further prosecution of the pending proceeding to punish the defendants' contempt until the hearing and determination by the state court of the action there instituted by these defendants, or the further order of this court. But in making such order I do not intend to express any opinion as to the plaintiff's right to proceed with any formal action already brought in this court, or by a formal action in this or any other court of the United States to seek such relief as it may be competent for those courts to grant upon the bill filed. The reasons I have now

assigned for granting the application of the defendants are of equal force to compel a conclusion against the alternative application made by the plaintiff, and that application is therefore denied.