ALLIS v. STOWELL.

*(Circuit Court, E. D. Wisconsin. January 17, 1883.)*

1. PATENTS—INFRINGEMENT—CONTEMPT PROCEEDINGS.

Where there is doubt upon the question of infringement, the court will not determine that question in contempt proceedings, instituted after a decree in a pending suit, but will remit the party to his right to file a supplemental bill, or to institute a new and plenary action.

2. SAME—DEMURRER.

Where the bill alleged the prosecution of a former suit, and the entry of decree therein, holding an infringement as to one of the claims of a patent, and embraced in its allegations and prayer for relief both claims of the infringed patent, *held,* that it was not open to demurrer on the ground that the allegations of the bill show that complainant had received full relief in the former suit.

3. SAME—PRELIMINARY INJUNCTION.

Where an infringement does not clearly appear to the court, it will not grant a preliminary injunction .

In Equity.

*W. G. Rainey,* for complainant.

*Flanders & Bottum,* for defendant.

DYER, J. This is a bill for an injunction to restrain the alleged infringement of a patent for an improvement in head-blocks, granted to Nelson F. Beckwith, December 26, 1871, and the case is now before the court on a motion for a preliminary injunction.

The patentee's specifications as stated in the patent, and so far as it is necessary here to notice them, are as follows:

"The principal difficulties encountered in sawing logs into boards are as follows, to-wit: *First.* When a log has been reduced to such thickness that only sufficient material remains for one or two boards, it is almost impossible to hold it upright upon its edge against the standards upon the carriage during the operation of sawing. The liability of the log to thus turn or slip upon the head-blocks is greatly aggravated if its lower edge next to the standard is wany or rounded off from any cause. For this reason it is customary in all saw-mills to leave the last cut in the form of a thick plank, affording sufficient bearing surface to prevent its turning upon the head-block. Two thicknesses of lumber are therefore sawed from the same log or cant.

*Secondly.* The standards employed for saw-mill carriages are usually so constructed to hold the log, that, when the latter is to be sawed entirely into narrow boards of the same thickness, the last two or three are liable to bend during the operation of sawing, varying the thickness of each more or less, and producing thereby imperfect boards.

" My invention has for its object to overcome these difficulties, and to this end it consists in constructing the standards with wide-bearing faces for the logs, and in providing each with a central vertical slot or mortise, through which a series of hooks are projected to grasp the log or cant. The lower hook is curved upward, to catch into the lower edge of the log, next the standard, and the upper hooks are curved downward, to catch into the face of the log. The lower hook and the series of upper hooks, therefore, move in opposite directions, to grasp the log between them and prevent it from slipping. The hooks are operated simultaneously by a lever, from the back of the standard, and by a suitable system of connecting bars, as I will presently describe. By this arrangement the upper hooks hold the log securely in contact with the lower hook, while the latter holds it firmly against the standard, and prevents it from slipping until the last board is sawed. By constructing the standards with a wide face, and in arranging the hooks to project through a central slot, a broad bearing is formed for the log upon each side of the hooks, so that, when the log is reduced to the thickness of two or three boards, the latter are held securely against bending while being sawed."

After further describing the construction of his device in detail, the patentee says:

"While I have shown a standard specially constructed to receive the hooks, I do not limit myself to this construction, as I design to apply them to all varieties of standards, old and new."

The first two claims of the patentee are as follows:

"(1) In combination with the standard for saw-mill carriages, the hooks, C, D, adapted to be simultaneously projected in opposite directions through the central vertical slot in the face of said standard, substantially as described, for the purpose specified.

"(2) The combination of the hooks, C, and connecting bars, F, I, with the operating lever and the hook, D, substantially as described, for the purpose specified."

In a suit between these parties heretofore prosecuted in this court to restrain the infringement of this patent, after hearing upon full proofs, the court entered a decree restraining the defendant from making, using, or selling any machine embodying in a head-block for a saw-mill the features set forth and described in the first claim of the Beckwith patent. That suit, in the form of an accounting to ascertain profits and damages, is still pending.

Subsequent to the entry of the decree last mentioned, it was claimed by the complainant that the defendant was still manufacturing and

selling saw-mill dogs, which were an infringement of the Beckwith patent, and was thereby violating the injunction which had been previously granted. Thereupon proceedings were instituted to punish the defendant for contempt of court. These proceedings came on to be heard, and the court decided that, as it was not then made entirely clear that the mill-dogs which, the defendant was making infringed the first claim of the patent, it would not enforce its former decree by punishment of the defendant as for contempt. In other words, the court held that, where there was doubt upon the question of infringement, it would not determine that question in contempt proceedings, but would remit the party to his right to file a supplemental bill in the pending suit, or to institute a new and plenary action; and an order was thereupon entered dismissing the contempt proceedings, but without prejudice to the complainant's right to file a supplemental bill in the suit yet pending, or to file an original bill in a new suit, as he might elect.

Subsequently the present bill was filed, which has been demurred to, and the demurrer has been heard concurrently with the motion for a preliminary injunction.

The bill alleges the prosecution of the former suit and the entry of decree therein, and that the saw-mill dog which the court in that suit held to be an infringement of the first claim of the Beckwith patent, and which the defendant was therein enjoined from making and selling, was and is substantially the same as the dog which he is now manufacturing; and the ground of the demurrer is that this and other allegations of the bill show that the complainant has obtained full relief in the former suit. It is to be borne in mind, however,— and this the bill in the present case alleges,—that the decree in that suit only adjudged infringement so far as the first claim of the patent was concerned, while the scope of the present bill embraces both claims of the patent. Moreover, the order of the court dismissing the contempt proceedings, as already stated, was made without prejudice to the right of the complainant to file a supplemental bill in the first suit or an original bill in a new suit, as he might elect; and while, of course, there was contemplated by that order a bill that should be good on demurrer, yet the order was thus made with knowledge that the first suit was yet pending; and, indeed, the order referred to was made in that suit, and the present bill was accordingly filed. In one view of the case it is filed under leave of court, and as the relief it seeks is really broader than that given in the first suit, I think the demurrer should be overruled. An order will be en-

tered accordingly, and the defendant will have 30 days to answer the bill.

Since the decree in the former suit only adjudged infringement of the first claim of the patent, it has since been evidently the view of the defendant that he was at liberty to manufacture and sell saw-mill dogs similar to the Beckwith device, provided the dogs were attached as a separate construction to the standards, so that there should not be a combination of the standard with hooks adapted to be simultaneously projected in opposite directions through central vertical slots in the face of the standard, as described in Beckwith's first claim. And, in this view of his rights as a manufacturer, he has since been making, to some extent, what are described as attachment dogs, and which are more particularly designated as the "Boss dog," and the "Boss dog improved." These dogs were produced on the hearing of this motion as exhibits, and are marked, respectively, "Dog Exhibit No. 4," and "Exhibit Stowell Attachment Dog." The first-named is also marked "Patented December 26, 1871," which is the date of the Beckwith patent. Clear proof has been made that the defendant, since the decree in the former suit, has manufactured saw-mill dogs of the construction of these exhibits, and small-sized models of the same have been exhibited to the court. The defendant has also confessedly manufactured and sold another dog, a specimen of which is in evidence and marked "Exhibit Stowell X." This is known as the "geared dog;" that is, the hooks are operated by means of connections with the lever in the form of cog-wheels instead of connecting bars.

I shall not here attempt to describe in detail the construction of the devices mentioned. In determining in this case, and on this motion, whether they infringe the Beckwith patent, both the claims of the patent before mentioned are to be taken into consideration. As they are attachment dogs, they do not show a combination of the standard with the hooks, so that the latter may project through central vertical slots in the face of the standard. But, taking the patentee's specifications in their entirety, I do not think he limited himself to that precise construction; and it seems to me clear that when the standard is attached to the dog in the manner shown in "Dog Exhibit No. 4," and "Exhibit Stowell Attachment Dog," and when the mechanical construction of the dog is like that disclosed in those exhibits, there is such a union of the dog and standard as to make them practically one device, and such a form of construction, in de-

tail and in entirety, as, within the doctrine of equivalents, makes a case of infringement of the Beckwith patent.

I shall, therefore, grant a preliminary injunction restraining the defendant, pending this suit, from manufacturing or selling a saw-mill dog of the construction shown in "Dog Exhibit No. 4," and "Exhibit Stowell Attachment Dog," or as shown in the brass models in evidence; the complainant first executing a bond with surety, to be approved by the clerk, in the sum of $2,500, conditioned for the payment of all damages which the defendant may sustain in consequence of the injunction, in case it shall be ultimately held that said injunction was improperly allowed.

As to the dog shown in "Exhibit Stowell X," known as the geared dog, a preliminary injunction is denied, for the reason that, because of its peculiarities of construction, I am not now prepared to hold that it infringes the patent sued on.