BURR *v.* KIMBARK.

*(Circuit Court, N. D. Illinois.   January 17, 1887.)*

1. INJUNCTION — BREACH — CONTEMPT — INFRINGEMENT OF PATENT — BOND — KNOWLEDGE OF FILING.

Where a preliminary injunction to restrain the infringement of patent-rights is granted, on condition that a bond be filed by the plaintiff, and the defendant was present in court at the time the order was read and approved, and the complainant then exhibited the form of bond which he was required to give, and stated that the bond would be filed as soon as the surety's signature could be obtained, and it was in fact filed on the same day, the defendant cannot, in proceedings to punish him for contempt in committing a breach of

the injunction, plead in justification that he was ignorant of the filing of the bond, it being his duty, without notification, to ascertain whether the bond had been filed or not.

**2.** SAME—MANUFACTURE OF ARTICLES INVOLVING PRINCIPLE IN ISSUE.

Where the principle involved in a patent is the point in issue in a suit to restrain its infringement, the defendant will commit a breach of a preliminary injunction, and be punishable for contempt, where, for the purpose of evading the injunction, he continues to manufacture articles involving the same principle, with but slight modifications of structure.

Rule to Show Cause.

*Munday, Evarts & Adcock,* for complainant.

*Coburn & Thacher,* for defendant.

BLODGETT, J. This is a proceeding to punish the defendant for an alleged contempt of the injunctional order entered in this case on the second day of August last. 28 Fed. Rep. 574. The bill was filed on the fourteenth of May last, and alleged that complainant was then the owner of Patent No. 142,989, duly issued to himself from the patent-office of the United States in September, 1873, for certain "improvements in wagon-bodies;" Patent No. 187,452, issued from the patent-office of the United States to himself in February, 1877, for "improvements in wagon-body irons," and patent No. 187,450, issued to himself from the patent-office of the United States in February, 1877, for "improvements in dash-boards." The bill charged defendant with the infringement of the invention set forth and claimed in all of the said patents, and that he was then, at the time of the filing of the bill, engaged in the business of manufacturing and selling wagon bodies containing devices covered by claims in all of these patents. A motion for an injunction *pendente lite* was made in the case, and, after hearing and considering the same, the court, on the second day of August last, entered an order commanding and enjoining "the defendant, his clerks, and attorneys, agents, servants, and workmen, that they forthwith and, until the further judgment and decree of the court, desist from directly or indirectly, in any way or manner, making, using, or selling any wagon bodies, or dash-boards, or wagon-body irons, substantially as described and claimed in said letters patent, or either of them;" reserving, however, to the defendant the right to sell, at current prices, the completed bodies he then had on hand, to the number 112, and no more. It is now charged that defendant has wholly disregarded the said injunction, and has continued to make and sell wagon bodies and dash-boards, and to use wagon-body irons, covered by and included in the claims of the said several patents, and the court is asked to punish such alleged contempt of its process and orders. A rule to show cause why the defendant should not be dealt with for the alleged contempt was duly issued, and the defendant has made return to said rule.

This return assigns various reasons why the defendant should not be punished for the contempt charged:

(1) That the injunction and order was granted on condition that the complainant should file a bond, with surety to be approved by the clerk in the

sum of $5,000, conditioned for the payment of such damages as might be awarded the defendant in case of the dissolution of the injunction, and that defendant never had, until on or after August 16th, any notice that such bond had been filed and approved.

(2) That the defendant, after the issue of such order, completed only 10 wagon bodies containing the improvements covered by the patents in question, and that said 10 wagon bodies were in process of manufacture, and nearly finished, at the time the injunction was ordered.

(3) That all the wagon bodies made since the injunction was ordered, with the exception of the 10 first mentioned, have not contained any of the devices covered by the patents.

(4) That the wagon bodies made by the defendant since the granting of said order have not infringed upon any of the valid claims of either of said patents, when said claims are considered in the light of the state of the art.

In regard to the first point, it is sufficient, I think, to say that the defendant was present in chambers at the time the injunctional order was read and approved, and the complainant at that time exhibited the form of bond which he was required to give in pursuance of that order, and stated who the surety was to be, and also stated that the bond would be filed as soon as he could go to the surety's place of business in this city, and obtain his signature; and the complainant, or his solicitor, left the chambers as soon as the order was directed to be entered, for the purpose of having the bond filed; and the records of the court show the bond was filed and approved by the clerk on the same day that the injunctional order was entered.

I have no doubt from what occurred in the chambers at the time the injunctional order was made that the defendant knew that the bond would be filed on that day, or, at least, had good reason and reasonable cause to suppose and believe that the bond would be filed on that day; and it was therefore his duty to have seen to it, and to have taken notice of the fact, that it was so filed. Being a party to the record and to this suit, he is chargeable with notice of all steps that are taken in it; and it is not necessary, to bind him by the terms of the order, that he should be specially notified of the fact that the bond had been approved and filed. It was his business to ascertain from the clerk, if he was anxious upon the subject, whether a bond had been filed or not. He was bound to assume it would be filed, as notice had been practically given in the court-room that the surety was acceptable, and the form of bond approved.

The defendant admits that, in violation of this injunction, he did proceed and finish 10 wagon bodies which were in process of manufacture at the time the injunction was issued. Having obtained from the court a concession of the right to sell the 112 then manufactured, and in his warehouse for sale, it seems to me the defendant ought to have been content with this privilege, and not have proceeded to finish the 10 that were then under way. Certainly, in doing so, he took the responsibility and risk of violating the process of the court; and, without going farther than this, it is enough to say that the defendant's own affidavit discloses, it seems to me, a deliberate, contumacious intent to violate this order of the court.

It is also admitted that after the defendant had finished the 10 wagon bodies which were completed, after the entry of the injunctional order, he continued to construct wagon bodies with center-posts containing sockets, but filed notches in the centre-posts, so that the slats or ribs could be notched or halved into the same, in such manner as to make some portion of the slats continuous. As it will be undoubtedly a question presented at the final hearing of the case whether the first, second, and third claims of complainant's patent No. 187,452, for wagon-body irons, necessarily require that the horizontal ribs, D, shall be cut off, and terminate at the intersecting sockets in the upright standard, E, and whether, by making a portion of this standard, E, continuous, the defendant has evaded the claims of this patent, it may be better to withhold any adjudication or opinion upon that point at this time; but it is conceded that the change in question was made by the defendant for the express purpose, and with the intention, of continuing the construction of wagon bodies in external appearance substantially like those covered by the complainant's patent, and which could and would be sold upon the market as and for such wagon bodies.

As to the fourth defense, that the claims of the complainant's patent are void for want of novelty, it is sufficient to say that this is the very question to be tried in this case. The defendant is expressly enjoined from manufacturing and selling any wagon bodies, dash-boards, or wagon-body irons substantially as described in the claims in said letters patent, or either of them. One of the claims of the complainant's patent for 1873 is "for a wagon body or box constructed of a frame-work, when the several parts are connected together without mortice or tenon, substantially as specified." This claim broadly covers the idea of making a wagon body or box without connecting the parts by mortice or tenon, but connecting them with irons, substantially as shown in this patent; and it is conceded the defendant has continued the manufacture of wagon bodies the parts of which were connected without mortice or tenon, and by means of angle irons and brackets and bolts, substantially as shown in this patent. It is true that the defendant's affidavits show that he has made four mortices and tenons in the construction of the wagon bodies which he has made since this injunction; but he has connected all the other parts of his bodies together without mortices and tenons. A complete wagon body, without the use of these connecting irons, would involve a very large number of mortices and tenons in each body. All these the defendant has used, with the exception of the mortices and tenons which connected the end-sills with the side-sills. Here the complainant has a broad claim for wagon bodies constructed in a special manner, and the defendant, notwithstanding this claim, and notwithstanding this injunction, has continued the construction of wagon bodies substantially, as I must say, in accordance with the claims of this patent, making only colorable changes.

So, in regard to the patent upon the dash-board. The complainant's patent covers a dash-board the ends of which are inclosed by socket pieces of metal. The defendant has constructed dash-boards of this

character, having the same appearance and general characteristics as those covered by the patent, but has riveted or fastened a piece of iron upon a metal casting, so as to make the socket by riveting this strap of iron upon the casting, instead of casting the socket whole, as was shown in the patent.

It seems to me, then, in summing up the whole of defendant's conduct since the entry of this restraining order, the proof shows a deliberate intention to violate the process of the court, and the rights of this complainant *pendente lite*, without regard to the injunction under which he was acting. It is no defense, under the circumstances, for the defendant to say that, so far as he has attempted to evade this patent, he has been acting under the advice of counsel. The defendant is himself an unusually intelligent man, having long been engaged in the manufacture of this kind of work, and knows very well the value of the exclusive right to this class of manufacture which is secured to the complainant by his patent; and when the injunction was granted it was his duty to submit to the injunction in the language in which it was stated, and "wholly refrain from the manufacture of wagon bodies and dashboards," which were covered by any of the claims of these patents. The validity of these claims, and the question of how far the change in the construction would enable the defendant to manufacture other wagon bodies involving substantially the same principle, with but slight modifications of structure, were questions to be determined at the hearing of the case; and it was the defendant's duty to await the results of that hearing, and not seek, even by the advice of counsel, for means to evade the order which was entered. A bond sufficient, in the judgment of the court, to indemnify the defendant, was exacted from the complainant as the condition of awarding him this injunction, and there was also reserved to the defendant the right to move for a further bond, if the one mentioned in the order should be found to be insufficient. Under these circumstances, the defendant could afford, and it was his duty, to wholly suspend the manufacture of this class of wagon bodies until his case was heard, and properly decided upon the proofs. Much, therefore, as I regret the necessity, a due regard to the dignity and efficacy of the process and decrees of the court requires, I think, such an exemplary punishment as will teach this defendant, and all others similarly situated, that they cannot violate the decrees of the court with impunity. The defendant is therefore ordered to pay a fine of $500, and the costs of this motion, including $50 to complainant's solicitor; the defendant to be arrested and committed to the jail of Cook county unless the fine and costs are paid within 10 days from the entry of the order.