*48 Vroom.*    Van Ness, Adm'x, v. North Jersey St. Ry. Co.

MATILDA L. VAN NESS, ADMINISTRATRIX OF LEVI VAN NESS, DECEASED, PLAINTIFF IN ERROR, v. NORTH JERSEY STREET RAILWAY COMPANY, DEFENDANT IN ERROR.

Submitted December 7, 1908—Decided June 14, 1909.

1. Plaintiff's intestate, while crossing a trolley track at a crosswalk on foot, was struck and killed by a trolley car. Evidence given during the course of the trial justified the inference that deceased and the motorman saw each other; that deceased stopped before going on the track and the motorman applied the brake and reduced the speed of the car, and then, observing that deceased had halted, released the brake and applied the power just as deceased, who had observed the reduced speed of the car, again started to cross. *Held,* following *Van Cott* v. *North Jersey St. Ry. Co.,* 43 *Vroom* 229, that the questions of negligence of the motorman and contributory negligence of deceased were both properly submitted to the jury.

2. Error in refusing to nonsuit at the close of plaintiff's case for lack of proof is rendered harmless when such proofs are afterwards supplied during the trial.

On error to the Supreme Court, whose opinion is reported in 46 *Vroom* 273.

For the plaintiff in error, *Edward Kenny.*

For the defendant in error, *Leonard J. Tynan.*

The opinion of the court was delivered by

PARKER, J.   If it were conclusively shown that the accident that caused the death of plaintiff's intestate took place in the manner and under the circumstances set forth in the opinion of the Supreme Court, we should in all probability concur in the finding of that court.

A careful examination of the evidence, however, satisfies us that the Supreme Court erred in holding that the plaintiff's presentation of the case was not helped by any evidence given for the defendant.

The plaintiff's evidence indicated that the deceased, while attempting to cross the street on a crosswalk, was prevented from doing so by a car going northwardly on the nearer track and had to wait until it had passed, and without paying any attention to a southbound car on the further track, or being unaware of its approach, stepped across the nearer track and directly in front of the southbound car. This state of facts would probably bring the case within the lines of *Eagen* v. *Jersey City, Hoboken and Paterson Street Railway Co.,* 45 *Vroom* 699; *Shuler* v. *North Jersey Street Railway Co.,* 46 *Id.* 824, and *Hageman* v. *North Jersey Street Railway Co.,* 45 *Id.* 279, cited in the opinion below, and since affirmed in this court, 46 *Id.* 939.

Even on the plaintiff's case, however, we think the Supreme Court assumed one fact as conclusively shown as to which there was at least a substantial dispute. The opinion stated that the accident occurred about seven-thirty P. M., when it was yet quite light. One witness, Carnelli, testified for plaintiff that it was between eight and half-past eight. Winant, a cabman, who saw the man being dragged under the car, testified that he was on his way to the Central railroad station just below to answer a call for eight-thirty, and, as he did not have much time, had sent his partner ahead to get the call while he took the blanket off his horse. If, as the jury might well have found in view of this evidence, the hour was nearly eight-thirty P. M., it is plain that it could not have been so light as was assumed by the court below, and if, by reason of the dusk, the car was not so plainly visible, it may have been a jury question as to whether the deceased saw it or ought to have seen it in season to avoid the accident.

But it is unnecessary to dwell on this aspect of the case, because, in our judgment, the evidence for the defendant cured the error, if there was error, in the trial court's refusal to nonsuit, and justified a submission of the case to the jury. On that evidence there were two theories open to the jury— one, that the deceased waited until the northbound car passed him, and then undertook to cross the track when the southbound car was about fifty feet away, going about six miles an

hour. This was the testimony of the witness Niedemeier and of the witness Tracy, except as to the distance of the car, to which Tracy did not testify. The other theory is that arising from the motorman's testimony, that the northbound car had not passed at all before the accident, but that the car which struck deceased was in plain sight; that deceased evidently saw it while standing on the northbound track, and, while the northbound car was also approaching him, undertook to exercise his judgment as to crossing in front of the southbound car. It may be that the motorman was right as to the northbound car; it may be that he confused it with another car that followed, for cars are very frequent at that point; but all the defendant's testimony points to the inference that Van Ness did see the car that struck him; that he halted as if to let it go by and at about the same instant the motorman applied his brake, and then seeing Van Ness, standing, released it and put on his power again just as deceased, apparently having observed the slowing of the car, started again to cross in front of it and was caught because the car took on increased speed instead of continuing to slow up. Samuel Kalisch, who was inside the car, testified to a burst of speed; the conductor said the car slackened and he thought a wagon was in the way, and looked out for one, then heard the brake ratchet, and noticed a little burst of speed and then the car came to a stop. The motorman and Tracy both testified on direct examination that deceased stopped on the northbound track and the car slowed up, and then the car started ahead again before deceased attempted to cross. Examined by the court, the motorman testified further as follows:

"*Q.* You say that this man that was crossing the street stopped and looked at you?

"*A.* Yes, sir.

"*Q.* Where was he when he stopped and looked at you?

"*A.* He was on the rail.

"*Q.* On what rail?

"*A.* I was on two over here and he was on this third one [indicating].

"*Q.* He was on the rail of the northbound track that was nearest to your track?

"*A.* Nearest to my car; yes, sir.

"*Q.* And then what did he or you do next?

"*A.* What did he do next after he stood?

"*Q.* Or what did you do—what next happened?

"*A.* When I seen him stand, then I started—I was winding the brake when he was crossing and I saw he was standing, and I thought it would be all right.

"*Q.* When you saw him stand what did you do?

"*A.* Then I started to feed the car up again; I thought he would stand there.

"*Q.* You mean you gave it more speed?

"*A.* More power; I had shut off entirely at that time, and when I seen him standing I fed the car up.

"*Q.* As you gave the car more speed and went on, what did he do?

"*A.* He stepped right in front of me; he made about two or three steps, right in the middle.

"*Q.* And where did he get to?

"*A.* He got right in the middle of the car, right in the middle of the fender."

Tracy also modified his testimony on cross-examination.

"*Q.* You saw him stop for one car to pass?

"*A.* Yes, sir.

"*Q.* And then what else?

"*A.* Well, he kind of stopped, and then the motorman slacked up, you know, and he started over in front of the car.

"*Q.* As he was coming over the car that hit him stopped, did it?

"*A.* It didn't exactly stop; it slacked up.

"*Q.* Slacked up?

"*A.* Yes, sir.

"*Q.* Slacked up right there, and then the man went on?

"*A.* Yes, sir.

"*Q.* And then the car hit him?

"*A.* Yes, sir."

From this testimony it is a fair inference that deceased, led by the action of the motorman in slackening speed, to believe that he was to be allowed to cross, attempted to do so before speed was again put on. It was for the jury to say which version they believed. *Hayward* v. *North Jersey Street Railway Co.,* 45 *Vroom* 678. But even if deceased did not start until just after the power was applied, the court would not be justified in nonsuiting for contributory negligence. We are unable to distinguish the case in this aspect, either in principle or in material facts, from *Van Cott* v. *North Jersey Street Railway Co.,* 43 *Id.* 229, decided by this court, in which it appeared that plaintiff stopped at the sounding of the bell, the car slackened and then increased its speed, and plaintiff then started forward again. Plaintiff was a minor, but this fact is not adverted to in the opinion as bearing on the question of contributory negligence. A similar state of facts, except that plaintiff was driving a horse and wagon, was considered in *Weinberger* v. *North Jersey Street Railway Co.,* 44 *Id.* 694, also decided in this court in which the Van Cott case was cited and approved.

We think the evidence above quoted justified the jury in drawing inferences similar to those stated in the opinion in the Van Cott case, pages 230, 231, and that the negligence of the motorman and of the deceased were both questions for the jury. In that case, as in this, the evidence to support the witnesses came into the case after a motion to nonsuit, and the rule there applied is applicable here. *Bostwick* v. *Willett,* 43 *Vroom* 21.

The fact, if it was a fact, that the northbound car had not passed at the time of the accident, would make no difference in this result. If it was approaching, it was still too far away to require any inference of negligence in law to be drawn from the act of deceased in standing on the track in front of it, for according to the motorman's testimony the fenders of the two cars were together when he stopped, and all the proof showed that the car had gone from the First Church crossing, where the accident occurred, to a point in front of a restaurant, some seventy-five to one hundred feet away, before stop-

ping, and at the time of the accident the northbound car must have been much further away.

The case was submitted to the jury under general instructions appropriate to this state of facts. This submission, under the circumstances, was proper. The judgment of the Supreme Court reversing that of the Circuit Court will be reversed, and the judgment of the Circuit Court affirmed.

*For affirmance*—None.

*For reversal*—The Chancellor, Garrison, Swayze, Trenchard, Parker, Bergen, Voorhees, Minturn, Bogert, Vredenburgh, Vroom, Dill, J.J. 12.